Good morning, Your Honors, and may it please the Court, I would like to reserve two minutes for rebuttal. There are two independent grounds for reversal in this case. First, the District Court deferred to application to guideline 2B.1.1's former application note 3A, which states that loss is the greater of actual loss or intended loss. This deference was not proper under Kaiser. On the second ground, the District Court failed to adequately explain its sentencing decision, specifically omitting a decision and findings of facts related to the key contested issue of whether or not the victim's collateral, the taking of the collateral, should be credited against the loss amount. Under either ground, this decision should be reversed. If Your Honors may, I would start with the issue of collateral offsets. In the government's and the defendant's sentencing memoranda and at the sentencing hearing, both sides heavily contested whether or not the victim's taking of collateral from Mr. Kunkel should be credited against the loss amount. The District Court did not make any findings of fact relevant to the substantial case law presented by the parties. For example, under Stoddard, the government argued that the taking of any collateral before the discovery of the offense should or should not count towards the loss amount. The District Court made no findings in this regard. Under Blitz, a question was presented as to whether or not the collateral was used to add a patina of legitimacy to the fraudulent scheme. This too, the District Court did not address. So is your contention that the collateral was taken and people were repaid before the crime was discovered? Your Honor, the truth is the record is murky on this front. Does it make a difference in your view? It does, if you take the government's argument under Stoddard at face value. What they would argue is that if the... Let's let the government speak for itself. What I want to know is, does your client not have an argument on the merits here if the District Court were to come back and say that the collateral was obtained after Rosenthal was arrested? So, Your Honor, there is some evidence that there was one or two victims that may have discovered the offense before the collateral was taken back. However, there is no evidence as to the other nine victims. And it is our position that the offense was not discovered at the time. And so on the merits, if you were to send this back, we do think that Mr. Rosenthal would prevail at least as to nine of the victims. But that said again, Your Honor, there were no findings as to any of the 11 victims. Why does your client get credit for Mr. Kunkel's collateral? Your Honor, I think that note 3E2 is just plain. It says, without caveats and without exceptions, that in any case, the collateral taken by the victims before sentence should be credit against the loss. And so taking that guideline commentary at face value, that is what should happen. Again, the government and the defense did point to case law that may weigh in on the issue. But admittedly, none of those cases actually address the plain text of that guideline commentary. So again, to the extent that the District Court never addressed that guideline, even though it was put on notice of the defendant's argument about the collateral loss issue, it should be remanded so the District Court can address that specific guideline commentary directly. Your Honor, if it is okay, I would actually like to make a correction at this point as  In my opening brief, I had argued that the failure to explain the issue should be reviewed under a plain error standard. That was wrong. In preparation for this oral argument, I reviewed the case law and the record again, and I think it is very clear that under Holguin-Hernandez, the correct standard of review is de novo. The Ninth Circuit, of course, has held in Taylor that the preservation of the substantive issue will also preserve an argument as to a failure to explain. But it But I'm looking at the note on the credits against loss. So it says that the money returned, the fair market value of the property returned, the service is rendered by the defendant or other persons acting jointly with the defendant. Do you think that Mr. Kunkel qualifies for that? Well, actually, Your Honor, I believe you might be looking at 3E1. The relevant note here is 3E2.  Let's go to 2. Yes. In a case involving collateral pledged or otherwise provided by the defendant. Yes. Did your client provide collateral? No. I would argue that it was, quote, otherwise provided, not by the defendant, just otherwise provided. Pledged or otherwise provided by the defendant. Mr. Kunkel, who was not charged here, is the one who provided the collateral. Yes, Your Honor. And, of course, again, if you look at the government's position and its sentencing positions at trial and on appeal, their argument is that Mr. Rosenthal used Mr. Kunkel to provide said collateral as some form of lolling payment, et cetera. Again, although I don't agree with that argument, if you take that argument at face value, the collateral must be reduced under this guideline note. Even if it wasn't provided by defendant? Even if it wasn't provided by the defendant by the plain text of this commentary note. It says provided by the defendant or otherwise provided. It doesn't say otherwise. But it says pledged or otherwise provided by the defendant. Yes. I mean, you're reading out of the by the defendant part by saying otherwise carries the weight. And I'm not sure I understand how the plain text of this note reaches to that point. Yes, Your Honor. You're right. I did accidentally omit those last few words. I have it in front of me now. A case involving collateral pledged or otherwise provided by the defendant. And again, I would reiterate that it is the government that is arguing that the collateral was otherwise provided by Mr. Rosenthal through Mr.  Again, if that argument is to be taken at face value and the government is deemed correct here, then that collateral does have to be reduced under this guideline commentary. Again, I would. If it wasn't, I mean, I'm still caught, I'm afraid, on the by the defendant part. If this collateral was not provided by the defendant, how is it the defendant can claim benefit of it? Yes, Your Honor. We would argue that the collateral was not provided by the defendant. In this case. So it wasn't, so why does he get benefit for it? I mean, we don't disagree on that. It was not provided by the defendant. Right, Your Honor. But again, it is the government's position that it was provided by the defendant. So the argument is, if the trial court, if you read the sentencing transcript and interpret the trial court as saying that the collateral was provided by the defendant in some manner, that's just not logically coherent with failing to include this credits against loss. If the, so if your client had a rich aunt, came forward and said, honey, you're my only, you're my only beneficiary, I'll just, I'll just, let's just, let's just solve this right now and just refunded all the money, there would be zero loss? In that case, Your Honor, the answer would be no, because the question is what the relationship between Mr. Rosenthal and the aunt would be with regard to this fraud. There obviously needs to have, there needs to be some nexus between the aunt's payments and the fraud. Here the government is claiming that there is a nexus, that these collateral pledged by Mr. Kunkel served as some kind of lulling payment to add some kind of legitimacy here. In the case of a naive and beneficial aunt, I don't see that nexus here. I think that would be a distinguishable case. And so, so your client in that case then would be liable under the guidelines for the full amount of loss, the 3.9. I would also say, Your Honor, there are other inquiries as to this aunt hypothetical here as well as within this case, right? Again, under Blitz and Stoddard and McCormick, there are questions as to the timing of when things were repaid, whether Mr. Rosenthal ever intended to repay back the  Those are also two inquiries that would be relevant to your question about the aunt hypothetical. Great, thank you. I assume you want to reserve the rest of your time? Yes, Your Honors. Thank you. May it please the Court, Stephen Archer for the United States. If I can address, because this is my only time, the primary issue that the defendant raised on the Kaiser issue, although I know the panel's concerns were on the collateral offset, which I will address. But on the primary issue of Kaiser, which is whether the district court in sentencing improperly relied on the commentary, that's specifically the application note 3A saying apply the greater of actual or intended loss. That's not an issue this court need to reach because the district court in sentencing did not rely on intended loss. The district court did not make a calculation of intended loss and separately actual loss. The district court applied actual loss. And that's at ER 107 when the district court say, quote, I agree with the government's assessment of loss. I consider the loss to be actual loss. So the district court never made a finding of intended loss. There was no intended loss number identified in the record that the defendant is pointed to. The defendant, the district court didn't say I was using the greater of actual or intended loss and the district court applied the actual loss of 3.9 million. Unless the court has any further questions on the Kaiser issue, which really is in a sense a red herring in this case because the district court used actual loss, not intended loss, I will move to the collateral offset. With that in mind, the argument, as my colleague has said, was teed up and fully vetted before the district court as to whether there should be offsets applied either for collateral that was posted by, as Judge Byrie pointed out, basically another victim, Mr. Kunkel, and also there were lulling payments that were made to various victims in smaller amounts. So those are the two areas that the defense was asking the district court at sentencing to be used to offset the actual loss. The lulling payments and the collateral that was Mr. Kunkel, another victim, as became clear at the sentencing through the other victims in the victim impact statement was a victim, but it was Mr. Kunkel's property that was posted in promissory notes or loans that the victims, at least one particular victim, signed in giving the money to the defendant for this made-up Alibaba IPO scheme. It's clear from the record that the government's sentencing brief, this is at ER 394 to 395, said, referencing, as Judge Clifton pointed out, the application note that these offsets are not entitled to be provided to the defendant if it's not the defendant's property or it was in furtherance of the scheme. There were cases that were pointed out. At the hearing and in colloquy with the sentencing judge, the prosecutor repeated the argument that the defendant was not entitled to credits or offsets for payments to victims for the purpose of concealing and continuing the Alibaba scheme or offsets for amounts the victims recovered by taking title to collateral pledged by Kunkel. This is at ER 70 and 72. And the district court, very well aware of the arguments, just clarified with the prosecutor at that time at that same site around ER 70, 71. So if a defendant is operating a Ponzi scheme and is part of that scheme, makes lulling payments to be able to continue the scheme, to avoid lawsuits, to avoid the victims from coming forward to the authorities, to quote in the district court's words, to give them some sense of false hope, those monies that are returned are not to be credited towards the lost figure. District court said the actual loss was $3.9 million, but apparently the court did not include the additional $1.2 million for the marijuana dispensary. Did the court ever actually explain why it didn't include the $1.2 million as part of the actual loss? It was the government's position that it should be included, but, and it was included and referenced by the district court for making some findings on other sentencing enhancements, but, Judge Elias, to your point, for the actual loss, the number was still the $3.9 million, and there was nothing in the record as to why the higher figure of $5 million wasn't adopted as actual loss. But I think as a practical matter, because the sentencing guideline range was, needed to be above $3.5 million, so I think the next range would have been over $9, $9.5 million, the government didn't need to find an actual loss, the $3.9 versus the $5 million, because it was still going to be the same plus 18 level enhancement. What would be at issue was the restitution, and the way that extra amount of loss to this victim, Paul Odulesco, was captured in the restitution was after the initial sentencing hearing, there was a supplemental restitution hearing for that cannabis scheme involving that victim, and there the restitution of the additional $1 million was added. I don't think, to answer Judge Bob's question, it mattered when the loaning payments were made or when the collateral was put up under the case law, if these amounts were part of the scheme, and from this case, by having in the promissory notes a collateral that would obtain the, you know, the willingness of people to loan money, that from the beginning was part of the scheme and the fraud, and again, the key point that it wasn't defendant's collateral, so you shouldn't get the offset. This is reminiscent of a case from the Ninth Circuit in which the district, citing the district court's statement at the sentencing, it would be like the arsonist who burns his house down, and then in the insurance fraud, at the loss at sentencing, claims that he should have offset his loss by the amount of the insurance premiums, and that's in a sense what defendant Rosenthal was doing by setting up and having another victim, Mr. Kunkel, pledge collateral that was able to be recovered by the victim. Unless the court has further questions, the government would submit that this district court's sentence should be affirmed. Great. Thank you. Your Honor, as I would like to return briefly to the questions posed to me by Judges Bybee and Judges Clifton, the question of whether or not this collateral was, quote, otherwise provided by the defendant and the timing of the discovery of when the offense occurred are positions that, of course, I could take here on this appeal, but that would not be appropriate at this stage. The bottom line is the trial court didn't make any findings of fact or decisions as to these issues, and under Chavez-Meza and Emmett, that failure to explain warrants a remand. That is the appropriate remedy here. So here's where I'm having trouble. I'm having trouble understanding what the district court's choices might be and how those have any consequences for your client. Yes, Your Honor. To run through them. The first would be the district court would agree with the government that these were lulling payments that were used to provide a legitimacy to the fraudulent scheme, that the victims discovered the offense before the collateral was repaid. In that circumstance, under the application note, the district court is still required to reduce the collateral taken, again, by that plain text of that commentary note and by the case law cited by the government. Or the district court could agree with me that none of these were lulling payments, that these victims had discovered this at a different time, the offense at a different time. In that case, perhaps I would concede that the collateral should not be reduced. But again, I think you have to take a look at the guideline straight, directly, as well as the case law, and allow the district court to make those decisions. So I'm, now I'm really, really confused. Yes. Because if I understood your argument, if we take the government's argument, your client gets the benefit of the collateral. If we take your argument, your client doesn't get the benefit of the collateral. That just seems completely backwards to me. Yes, Your Honor. I do realize that this is, we have now descended into a point of confusion from which I cannot return. But again, if it is collateral that was, quote, provided by the defendant or pledged in another way, and that's what the, oh, that's what you or the district court finds, ultimately it has to be reduced. Even if it's part of the scheme? No, Your Honor. Again, and that goes to the case law that was disputed before the district court. There's multiple findings when it comes to the timing, the legitimacy. That is relevant, too, and was never discussed by the district court in any way. I do want to spend just a few seconds on the Kaiser issue, Your Honors, even though I do realize that I'm out of time. I do want to emphasize that it is not a reasonable interpretation under Kaiser of a guideline that says the word loss to require a district court to say in any circumstance, regardless of the case, that the loss amount has to be the greater of one of these two amounts for the reasons stated in my brief. Thank you. Thank you both. The case has been submitted. Thank you.
judges: CLIFTON, BYBEE, LEE